**ADOLPH COORS COMPANY, Plaintiff-Appellee, Cross-Appellant,**

v.

**A & S WHOLESALERS, INC., Defendant-Appellant, Cross-Appellee.**

Nos. 76–1227, 76–1228.

United States Court of Appeals, Tenth Circuit.

Submitted March 16, 1977.

Decided July 29, 1977.

808

Leo N. Bradley of Bradley, Campbell & Carney, Golden, Colo., for plaintiff-appellee, cross-appellant Coors.

Richard E. Thigpen of Thigpen & Hines, Charlotte, N. C., and Irvin M. Kent, Denver, Colo., for defendant-appellant, cross-appellee A & S.

Before SETH and BARRETT, Circuit Judges, and KERR,* District Judge.

BARRETT, Circuit Judge.

This suit was initiated by Adolph Coors Company (Coors), a Colorado corporation, on January 19, 1973, to enjoin A & S Wholesalers, Inc. (A & S), a North Carolina corporation, from purchasing Coors beer in

* Of the District of Wyoming, sitting by designation.

Colorado from Colorado retailers and transporting it to North Carolina for resale to retail outlets.

Following a February 16, 1973, hearing, a Preliminary Injunction was entered enjoining A & S from obtaining Coors beer from Colorado retail outlets and transporting it to North Carolina for resale to wholesalers or retailers there. On June 5, 1973, A & S filed an Amended Answer and Counterclaim alleging that Coors, Coors Distributing Company and other persons unknown had combined and conspired to impose customer and territorial restrictions upon independent distributors, wholesalers and retailers in the sale of Coors beer. A & S prayed for damages and injunctive relief, alleging that Coors had violated §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2. The case was tried to the court following extensive and voluminous discovery consisting of depositions, affidavits and various and sundry documents. The evidence was essentially uncontroverted. On February 28, 1975, the court entered its Amended Memorandum Opinion and Order which (a) dismissed the Coors complaint and dissolved the preliminary injunction, (b) dismissed the A & S counterclaim insofar as it sought damages based on Coors' prosecution of the instant lawsuit, and (c) decreed that the A & S counterclaim based on Coors' alleged territorial and customer restrictions states a claim upon which relief may be granted. The aforesaid counterclaim was thereafter tried to a jury of six which found in favor of Coors on January 16, 1976. Judgment was subsequently entered on the verdict dismissing the A & S counterclaim. Both parties appeal.

We withheld and/or postponed any decision in this appeal until the United States Supreme Court had rendered a decision in the case of *Continental T.V., Inc., v. GTE Sylvania, Incorporated*, No. 76–15, on Writ of Certiorari to the United States Court of Appeals for the Ninth Circuit, 537 F.2d 980. That decision was handed down on June 23, 1977, reported in —— U.S. ——, 97 S.Ct. 2549, 53 L.Ed.2d 568. The Supreme Court there expressly overruled the so-called *Schwinn per se* rule announced in *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), which this court applied in *Adolph Coors Co. v. F.T.C.*, 497 F.2d 1178 (10th Cir. 1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). In a footnote, the Supreme Court observed that in our 1974 decision we had urged the Supreme Court ". . . to consider the need in this area for greater flexibility." —— U.S. ——, 97 S.Ct. 2557. In that respect we said: "Although we are compelled to follow the *Schwinn per se* rule rendering Coors' territorial restrictions on resale illegal *per se*, we believe that the *per se* rule should yield to situations where a unique product requires territorial restrictions to remain in business . . . Perhaps the Supreme Court may see the wisdom of grafting an exception to the *per se* rule when a product is unique and the manufacturer can justify its territorial restraints under the rule of reason. *White Motors Co. v. United States*, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 . . ." 497 F.2d at 1187. We hasten to observe that we did not there hold that the Coors territorial restraints were *in fact* justified under the rule of reason. That issue was not before us. In any event, denial of certiorari by the United States Supreme Court imports no expression of opinion on the merits. *Sunal v. Large*, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947).

■ We are required to test the contentions on appeal—to the extent directly applicable—measured by the law ". . . in effect at the time it [the appellate court] renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *United States v. Alabama*, 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Company*, 516 F.2d 33 (10th Cir. 1975); *Chicago, Rock Island & Pacific Railroad Company v. Hugh Breeding, Inc.*, 247 F.2d 217 (10th Cir. 1957), dismissed, 355 U.S. 880, 78 S.Ct. 138, 2 L.Ed.2d 107 (1957); *Lytle v. Commissioners*

*of Election of Union County*, 541 F.2d 421 (4th Cir. 1976), U. S. appeal pendg.; *Parrish v. Board of Commissioners of Alabama State Bar*, 524 F.2d 98 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188; *Ybarra v. City of San Jose*, 503 F.2d 1041 (9th Cir. 1974); 21 C.J.S. Courts § 194. Applying this rule, we are guided on appeal by the law announced in *Continental T.V., Inc., supra.*

The Supreme Court in *Continental T.V., Inc., v. GTE Sylvania, Incorporated, supra*, held in pertinent part:

We conclude that the distinction drawn in *Schwinn* between sale and nonsale transactions is not sufficient to justify the application of a *per se* rule in one situation and a rule of reason in the other. The question remains whether the *per se* rule stated in *Schwinn* should be expanded to include nonsale transactions or abandoned in favor of a return to the rule of reason. We have found no persuasive support for expanding the rule.

. . .

We revert to the standard articulated in *Northern Pac. R. Co.* [*Northern Pac. R. Co. v. United States*, 356 U.S. 1, [78 S.Ct. 514, 2 L.Ed.2d 545] (1958)] and reiterated in *White Motor* [*White Motor Co. v. United States*, 372 U.S. 253 [, 83 S.Ct. 696, 9 L.Ed.2d 738] (1963)], for determining whether vertical restrictions must be "conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." 356 U.S., at 5, 78 S.Ct., at 518. . . . Certainly, there has been no showing in this case, either generally or with respect to Sylvania's agreements, that vertical restrictions have or are likely to have a "pernicious effect on competition" or that they "lack . . . any redeeming virtue." Ibid. Accordingly, we conclude that the *per se* rule stated in *Schwinn* must be overruled. In so holding we do not foreclose the possibility that particular applications of vertical restrictions might justify *per se* prohibition under *Northern Pac. R. Co.* But we do make clear that departure from the rule

of reason standard must be based upon demonstrable economic effect rather than—as in *Schwinn*—upon formalistic line drawing.

—— U.S. ——, at pp. ——, ——, 97 S.Ct. at pp. 2561–2562.

To the extent, then, that the law announced in *Continental T.V., Inc., supra*, applies to the facts and circumstances contained in the record on appeal, we will dispose of those issues; otherwise the case must be remanded for further proceeding.

A & S appeals from the judgment dismissing that portion of its counterclaim based upon Coors' prosecution of the instant lawsuit and from the verdict and judgment relating to that portion of the counterclaim tried to the jury. A & S alleges that the trial court erred, especially in its failure to instruct the jury that the acts of Coors complained of constituted a *per se* violation of the Sherman Antitrust Act.

Coors cross-appeals from the trial court's denial of its Motion for Directed Verdict and from the award to A & S of $7,500.00, representing costs and damages pursuant to Coors' bonds posted upon its application for injunctive relief in that identical amount.

A recitation of the factual background, largely undisputed, should aid in our disposition of the legal issues presented.

Coors owns and operates a single brewery at Golden, Colorado, from which it produces and markets a beer product which is in great national demand. Coors is presently the fourth largest brewery in terms of national consumption even though it has historically limited its territorial marketing area to ten and one-half of the western states. Its brewery has produced at full capacity for years but, even so, there have been many occasions when the demand has outstripped production.

Coors markets its beer products through some 167 independent wholesale distributors in the established marketing area, where it enjoys an average market penetration of about 36.40 percent, notwithstanding that its beer products retail for substantially higher prices than its major competi-

tors. Coors has steadfastly maintained that the quality of its beer is the result of its unique brewing and distributing process, which requires refrigeration. Coors is the only "shipping" brewery, in that it ships all of the beer brewed at its plant in Golden to the various distributors in refrigerated units. The beer is made by the aseptic brewing process which requires refrigeration. In order to maintain the quality of its product, Coors requires that its distributors adhere to a program which requires refrigeration controls and proper and regular rotation. Coors representatives regularly monitor the program in order to "protect the integrity" of the Coors product. These standards are spelled out in the Coors Distributorship Contract and Policy Manual. Coors has established and maintained "vertical" restrictions on its marketing territory within which its beer products may be sold in order to guarantee their "integrity."

A & S is a North Carolina wholesaler licensee. Its agents and representatives traveled from North Carolina to Colorado where they purchased large quantities of Coors beer (hundreds of cases) from John Schultz, a Colorado retail licensee operating from a store in Denver, Colorado. Schultz had obtained a North Carolina nonresident liquor wholesaler's permit on December 27, 1972, but at no time did he hold a federal basic beer wholesaler's permit. A & S purchased the beer from Schultz at or near the Colorado retail prices. It sold the beer, following its delivery to Charlotte, North Carolina, at a substantially increased retail price. A & S actively assisted Schultz in obtaining the North Carolina permit, which was necessary under the law of that state in order to supply the A & S operation. This involved, *inter alia*, securing state approval of the Coors label and product, all without Coors' authorization or consent. When Coors became aware of the arrangement between A & S and Schultz, it initiated this suit.

## I.

We will first consider the contentions raised on appeal by A & S. To the extent that our discussion "flows over" involving Coors' cross-appeal we will relate to the same factual settings.

### The A & S Contentions

A & S contends that the trial court erred in (1) failing to find and/or conclude as a matter of law, that Coors' filing and continued prosecution of this suit, including the filing of its cross-appeal, was a part of its firm and resolute effort to enforce its illegal territorial restrictions on the resale of its beer products, after it had parted with title, risk and dominion over them, in violation of Section 1 of the Sherman Act, as sham litigation, (2) failing to instruct the jury that Coors' efforts at firm and resolute enforcement of territorial restrictions on the resale of its products constituted a *per se* violation of Section 1 of the Sherman Act, and (3) limiting the damages recoverable by A & S Wholesalers, Inc. as a result of the wrongful granting of the Temporary Restraining Order and the Preliminary Injunction to $7,500.00, representing the exact amount of the bonds posted by Coors.

### (1)

When Coors filed the instant suit on January 19, 1973, it had steadfastly maintained that it had an absolute and unqualified right to not only determine the area within which its beer products were to be marketed, but the right to impose certain controls over the products, following sale, then in the hands of the wholesalers and retailers in order "to protect the quality and integrity" of the products. Such was the Coors contention when the trial court issued the preliminary injunction. Our opinion in *Adolph Coors Company v. Federal Trade Commission, supra,* had not then been rendered. While that case involved Coors' competitive restrictions imposed on wholesalers within Coors' fixed marketing area and did not, as the trial court correctly observed, involve the use of restrictions to limit the marketing of its beer products to that area, still the decision was firmly anchored to *United States v. Arnold, Schwinn & Co., supra*: We held that the *Schwinn*

*per se* rule rendered Coors' territorial restrictions on resale illegal *per se* on the basis that once the manufacturer (Coors) ". . . has parted with title and risk, he has parted with dominion over the product, and his effort thereafter to restrict territory or persons to whom the product may be transferred—whether by explicit agreement or by silent combination or understanding with his vendee—is a *per se* violation of § 1 of the Sherman Act." 388 U.S. at 382, 87 S.Ct. at 1867, quoted at 497 F.2d at 1186.

The district court correctly noted that prior to our decision above referred, to, ". . . there was some authority that consideration of potential manufacturer liability to consumers and public safety would exempt from the *Schwinn* rule of *per se* illegality restraints on alienation of some types of products." [Cases cited.] [R., Vol. XXVIII, p. 285.]

■ The trial court rejected the A & S allegations that Coors instituted the instant lawsuit without probable cause in order to suppress competition in violation of the antitrust laws as proscribed in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). There allegations had been made that certain motor carriers had conspired to monopolize by means, *inter alia*, of harassing judicial proceedings. The Court there recognized that the use of judicial or administrative processes under the pretense of obtaining a favorable decision may, in fact, be a sham if the true purpose is that of unlawfully interfering directly with the lawful business pursuits of a competitor. We agree with the trial court's finding that A & S has failed to prove that Coors initiated and pursued the instant action as a "sham." We concur that Coors proceeded in a "genuine attempt to secure a decision from the court on the merits . . . there has been no evidence that plaintiff's [Coors'] lawsuit was a mere sham to cover an attempt at direct interference with the defendant's [A & S'] business." [R., Vol. XXVIII, p. 292.] We agree with the trial court's finding that nothing in this record

subjects Coors to Sherman Act liability imposed under the "sham" exception to the rule as invoked in *California Motor Transport Co. v. Trucking Unlimited, supra*, and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

Further support for the trial court's finding that Coors' initiation and pursuit of this litigation—and its active efforts to accomplish state legislation within its marketing area to protect the territorial restrictions imposed in its contracts with its distributors—was not a "sham" is, we suggest, found in the fact that when this case was orally argued there was then pending before the United States Supreme Court Case No. 76–15, entitled *Continental T.V., Inc. v. GTE Sylvania, Incorporated, supra*, which resulted in the high Court's overruling of the *Schwinn per se* rule. The very fact that the Supreme Court accepted certiorari there to review the *Schwinn* rule belies any element of bad faith or sham on the part of Coors.

(2)

A & S contends that the trial court erred in failing to instruct the jury that Coors' efforts at firm and resolute enforcement of territorial restrictions on the resale of its products constituted a *per se* violation of Section 1 of the Sherman Act.

■ We see no merit in this contention inasmuch as it relies almost exclusively on the same predicate discussed in (1) above: "A & S was entitled . . . to have the jury informed that the vigorously enforced territorial restrictions of Coors was a *per se* violation of the Sherman Act and that all that they had to determine was the fact and amount of damages." [Brief of A & S, Appellant, Cross-Appellee, p. 23.] The Supreme Court decision in *Continental T.V., Inc. v. GTE Sylvania, Incorporated, supra*, disposes of this issue adversely to A & S.

(3)

A & S charges that the trial court erred in limiting the damages recoverable by A &

S as a result of the wrongful granting of the Temporary Restraining Order and the Preliminary Injunction to the sum of $7,500.00, representing the exact amount of the bonds posted by Coors.

A & S concedes, significantly, that the general rule is that damages resulting from a wrongfully granted injunction are limited to the amount of the bond unless it is established that the injunction was obtained maliciously and without probable cause. *See*: A & S Brief, Appellant, Cross-Appellee, p. 23 and cases cited in support thereof: *Jamaica Lodge v. REA*, 200 F.Supp. 253 (D.N.Y.1961); *Northeastern Airlines, Inc. v. World Airways, Inc.*, 262 F.Supp. 316 (D.Mass.1966). A & S contends, of course, that the litigation initiated and prosecuted by Coors (particularly that following the filing of our opinion in *Adolph Coors Company v. Federal Trade Commission, supra* ), was "totally unjustified" and maliciously brought and maintained. A & S relates back to its basic contentions on the issue of "sham litigation" discussed in (1), *supra*. We have, of course, already disposed of that contention adversely to A & S.

Following the jury's verdict and the judgment in favor of Coors, A & S renewed a prior Motion for Assessment of Costs and Damages under the bonds posted as security per the court's orders pursuant to Fed. Rules Civ.Proc., rule 65(c), 28 U.S.C.A. This statute grants discretion in the district court to fix the amount of the security an applicant for restraining order or preliminary injunction must post, for the payment of costs and damages "as may be incurred or suffered" by reason of a party being wrongfully enjoined or restrained.

■ The general rule is that absent proof of malice in obtaining injunctive relief, a party cannot be liable in damages resulting from a wrongfully or erroneously granted injunction beyond the limits or maximum amount of the bond or bonds. *Atomic Oil Company of Oklahoma, Inc. v. Bardahl Oil Company*, 419 F.2d 1097 (10th Cir. 1969), *cert. denied*, 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970); *K–2 Ski Company v. Head Ski Co., Inc.*, 506 F.2d 471 (9th Cir. 1974); *First Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481 (4th Cir. 1970); *Benz v. Compania Naviera Hidalgo, S.A.*, 205 F.2d 944 (9th Cir. 1953), *cert. denied*, 346 U.S. 885, 74 S.Ct. 135, 98 L.Ed. 389 (1953); *International Ladies' Garment Workers' Union v. Donnelly Garment Co.*, 147 F.2d 246 (8th Cir. 1945), *cert. denied*, 325 U.S. 852, 65 S.Ct. 1088, 89 L.Ed. 1972 (1945); *National Maritime Union of America, AFL–CIO v. Commerce Tankers Corporation*, 411 F.Supp. 1224 (D.C.N.Y.1976); *Progressive Steelworks Union v. International Harvester Corp.*, 70 F.R.D. 691 (D.C.Ill.1976); Moore's Federal Practice, Second Ed., Vol. 7, § 65.10[1]; Wright and Miller, Federal Practice and Procedure, Civil, Vol. 11, § 2954.

■ While certainly the trial court did not err in limiting Coors' liability to the face amount of the bonds under the facts, circumstances and then prevailing law, including the applicable *Schwinn per se* rule, we must nevertheless set aside the trial court's order relating to the liability on the bonds and remand for such further proceedings the court deems necessary and proper in light of the Supreme Court opinion rendered in *Continental T.V., Inc., v. GTE Sylvania, Incorporated, supra*. Under the *Schwinn* doctrine, a manufacturer's vertical restrictions on its dealers' territories or potential customers were held to be illegal *per se* under § 1 of the Sherman Act once the manufacturer parted with dominion (by sale) over its goods. *Continental T.V., Inc., supra*, in overruling the *Schwinn per se* doctrine, holds that even should a manufacturer retain dominion or control with respect to these goods, and if the dealers' positions and functions are indistinguishable from those of an agent or salesman of the manufacturer, then the restrictions are examined via the *rule of reason*. Under that rule we must test Coors' contentions that the restrictions and controls it imposes [as more fully set forth in *Coors v. FTC, supra* ] are within the *rule of reason*, i. e., whether they are required in order to protect and insure the "quality and integrity" of its beer products. That test must be

first presented and ruled upon by the trial court. It may necessitate a full evidentiary proceeding. In *White Motor Co. v. United States, supra,* the Supreme Court addressed this problem:

. . . A vertical territorial limitation may or may not have that purpose or effect. [no purpose except that of stifling of competition] We do not know enough of the economic and business stuff out of which these arrangements emerge to be certain. They may be too dangerous to sanction or they may be allowable protections against aggressive competitors or the only practicable means a small company has for breaking into or staying in business, (cf. *Brown Shoe, supra,* [370 U.S. 294], at 330, [82 S.Ct. 1502, 8 L.Ed.2d 510;] *United States v. Jerrold Electronics Corp.,* 187 F.Supp. 545, 560–561, [D.C.Pa.] aff'd, 365 U.S. 567, [81 S.Ct. 755, 5 L.Ed.2d 806]) and within the "rule of reason." We need to know more than we do about the actual impact of these arrangements on competition to decide whether they have such a "pernicious effect on competition and lack . . . any redeeming virtue" (*Northern Pac. R. Co. v. United States, supra,* [356 U.S.] p. 5, [78 S.Ct. 514] and therefore should be classified as *per se* violations of the Sherman Act.

372 U.S., at 263, 83 S.Ct. at 702.

### *Coors Contentions on Cross-Appeal*

We now turn to the contentions presented by Coors on its cross-appeal. They are: (1) that the trial court erred in ordering Coors to pay A & S the amount of $7,500.00, representing the full amount of the two bonds posted by Coors as security for the entry of the Temporary Restraining Order and the Preliminary Injunction, (2) that the trial court erred in determining that the A & S counterclaim set forth a valid cause of action because, (a) A & S lacked standing under the antitrust laws as a result of its violation of state and federal laws, (b) Coors and its distributors have the absolute right to deal with whomever they choose, (c) statutes enacted pursuant to the Twenty-First Amendment may function as a bar

to antitrust actions, and (3) that the trial court erred in failing to direct a verdict in favor of Coors at the close of A & S' evidence and at the close of all the evidence.

### (1)

Coors alleges that the trial court erred in ordering it to pay A & S the amount of $7,500.00 representing the full amount of the two bonds posted by Coors as security for entry of the Temporary Restraining Order and the Preliminary Injunction.

■ This contention has heretofore been discussed and disposed of, under part 3 of the A & S contentions. We observe that even though this matter is to be determined anew on remand, Coors is in error in its contention that it could not be held liable on the bonds unless the evidence established that it prosecuted the instant case maliciously. Such, of course, is not the standard. The liability may be imposed and the applicant for injunctive relief may be held liable within the limits of the amount of the bonds for damages resulting from their wrongful or erroneous grant. *Atomic Oil Company of Oklahoma, Inc. v. Bardahl Oil Company, supra,* and authorities cited in part (2) of I above.

The trial court's order fixing the Coors liability on the two bonds is set aside and, upon remand, the trial court may undertake such further or other proceedings deemed necessary and proper in light of *Continental T.V., Inc., supra.*

### (2)

Coors contends that the trial court erred in finding that A & S' counterclaim set forth a valid cause of action based upon the allegation that Coors' alleged territorial and customer restrictions were violative of the antitrust laws. The basic premise of the Coors contention here is that the A & S conduct is not within the protected zone of the antitrust laws and that A & S lacks standing because it was in violation of both state and federal law, as was retailer Schultz, constituting cause for suspension

or revocation of the licenses and permits necessary for A & S to do business. Under these circumstances, argues Coors, A & S is precluded from invoking the protection of the antitrust laws.

The primary contention by Coors of A & S' violation of Colorado's liquor laws is that Schultz, a retail licensee from whom A & S obtained the major source of its supply of Coors beer, was not licensed to "sell at wholesale" which is defined as "selling to any other than the intended consumer." C.R.S. (1963) § 75–2–4(18) (Supp.1969). In addition, Coors alleges that Schultz was an agent of A & S and that his unlawful conduct must be imputed to A & S. In regard to violation of federal law, Coors contends that inasmuch as Schultz did not hold a federal beer wholesaler's permit as required by 27 U.S.C.A. § 203(c) that his sales to A & S were unlawful.

The trial court concluded that the above defenses urged by Coors were related to that which the court characterized as the ". . . now thoroughly discredited defense of in pari delicto or contributory illegality." [R., Vol. XXVIII, p. 287.] The court found that such defenses had been consistently rejected in the antitrust context, citing to *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). The court also concluded that the alleged violations of the Colorado and federal licensing laws, even if attributable to A & S, do not provide Coors with any protection from the liability provisions of the Sherman Act, inasmuch as neither the Colorado Liquor Code nor the Federal Alcohol Administration Act (27 U.S.C.A. § 201, et seq.) purport to permit combinations, otherwise in restraint of trade, to bring about their enforcement as a bar to an antitrust action. In relation to the alleged violation of North Carolina law, the court found that the North Carolina Board of Alcoholic Control had interpreted the laws of that state contrary to Coors' contentions.

In *Semke v. Enid Automobile Dealers Association*, 456 F.2d 1361 (10th Cir. 1972), we said, *inter alia*:

. . . The underlying basis for the *Perma Life* decision is the superior public interest in enforcing even by private action the antitrust laws. As the Court put it, the weighing of the relative moral worth of the parties would seriously undermine the value of the private action in antitrust enforcement. If participation by a plaintiff in an illegal conspiracy in restraint of trade is not to bar him, it follows that his violation of a state statute which is unrelated to the antitrust laws would carry even less moral impact and would assume even less applicability as a barrier to an antitrust suit.

Since the policy values inherent in the antitrust statutes even more clearly outweigh any social value flowing from a state licensing statute such as the instant Oklahoma one, we conclude that the district court erred in refusing to distinguish between a conspiracy to activate state processes, including the obtaining of an injunction (which actions as we see them are within the *Parker* [v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315,]-[*Eastern Railroad Presidents Conference v.*] *Noerr* [*Motor Freight*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464,] exemption), and on the other hand preemption of the area by a state statute, to the extent that it would of itself bar and exclude an antitrust action. Giving this effect to the state statute would extend substantially the *Parker-Noerr* exemption and would at the same time have the effect of disregarding the public policy objectives of the antitrust laws.

456 F.2d, at pp. 1369, 1370.

*See also: Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964); *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); *Greene v. General Foods Corporation*, 517 F.2d 635 (5th Cir. 1975), *cert. denied*, 424 U.S. 942, 96 S.Ct. 1409, 47 L.Ed.2d 348 (1976); *American Motor Inns, Inc. v. Holiday Inns, Inc.*, 521 F.2d 1230 (3rd Cir. 1975).

■ The trial court did not err in concluding that the alleged illegal acts of A &

**816**

S and Schultz do not constitute a defense to the alleged Sherman Act violations attributed to Coors.

**(3)**

Coors contends that the powers given to the states by the Twenty-First Amendment to the United States Constitution do not permit federal limitations under the commerce clause. Inasmuch as the Twenty-First Amendment vested the regulation of traffic within the borders of the respective states to the states, Coors argues that this, by necessary implication, denies application of federal antitrust laws which would defeat state policy governing the traffic of alcoholic beverages.

The trial court found that Colorado has not exercised its Twenty-First Amendment power in a way which would give sanction to territorial or customer restrictions prohibiting the Coors product from ever leaving the State of Colorado. While recognizing that the Colorado statutes do seem to sanction vertical restrictions which have the effect of eliminating inter-territorial competition between Coors wholesalers [C.R.S. (1973) §§ 12–47–108(2) and 12–47–124(4)], the trial court stated that there are no statutes sanctioning customer or territorial restrictions imposed ". . . down the line of distribution on retailers and do not purport to allow the manufacturer or the brewer control over the ultimate disposition of his product." [R., Vol. XXVIII, p. 289.] We agree. The interpretations of Colorado statutes urged upon us by Coors under its Twenty-First Amendment contentions have not been passed upon or decided by the Colorado state courts. Thus, in the absence of controlling state decisions or precedents, the views of a federal district judge who is a resident of that state carry extraordinary weight on appeal. *In re Cox*, 543 F.2d 1277 (10th Cir. 1976); *Matthews v. IMC Mint Corporation*, 542 F.2d 544 (10th Cir. 1976). Our independent research leads us to conclude that the court did not err in its conclusion that ". . . the state's power to regulate liquor traffic under the Twenty-First Amendment provides the plaintiff

with no defense to the antitrust counterclaim here asserted." [R., Vol. XXVIII, p. 290.]

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.