**LAMP LIQUORS, INC., a Wyoming Corporation, Plaintiff-Appellant,**

v.

**ADOLPH COORS COMPANY, a Colorado Corporation, and Cheyenne Beverage, Inc., a Wyoming Corporation, Defendants-Appellees.**

No. 76–1485.

United States Court of Appeals, Tenth Circuit.

Submitted July 19, 1977.

Decided Sept. 20, 1977.

426

John J. Rooney of Rooney, Horiskey, Bagley & Hickey, Cheyenne, Wyo., for plaintiff-appellant.

Leo N. Bradley and Earle D. Bellamy, II, of Bradley, Campbell & Carney, Golden, Colo., for defendant-appellee Adolph Coors Co.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY,* Chief Judge.

WILLIAM E. DOYLE, Circuit Judge.

The determinative question in this case is whether defendant Adolph Coors Company, a Colorado corporation, and Cheyenne Beverage, Inc., a Wyoming corporation, can defend a private suit brought pursuant to the Sherman Antitrust Act, 15 U.S.C. Sections 1 and 2, on the basis that this Act is here superseded within the State of Wyoming by the Twenty-First Amendment, Constitution of the United States, and by a Wyoming statute that prohibits trafficking in intoxicating liquors except as provided by state law. The trial court held that the Sherman Act had indeed been superseded entirely in this area by the Twenty-First Amendment and that this factor, together with the Wyoming statute that licenses re-

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

tailers and wholesalers, effectively prevents the prosecution of a private antitrust suit against the brewer of the beer, in this case the Adolph Coors Company. We also consider the trial court's ruling that Lamp Liquors lacked standing to prosecute the antitrust action because of lack of a right to conduct the business which it claims is being interfered with.

The plaintiff in the antitrust suit, Lamp Liquors, Inc., has a retail license. It does not have a wholesale license, and seemingly it is selling beer that will be resold. On this basis the trial court has held that the plaintiff was precluded from suing under the Sherman Act claiming restraint of trade on the part of Adolph Coors Company and Cheyenne Beverage, Inc., a wholesaler and supplier of the plaintiff.[1]

The trial court further held that the plaintiff was precluded from bringing the suit because it was a violator of the law.

The court's determination was purely on the allegations in the pleadings. Any evidence considered was drawn from the surrounding circumstances, as a result of which appellant did not have a trial.

Plaintiff-appellant filed its complaint in the United States District Court for the District of Wyoming, in which it alleged that the defendant had formed an unlawful combination to withhold malt liquor manufactured by Coors and distributed in Cheyenne from the plaintiff. Injunctive relief and treble damages were prayed for. Cheyenne Beverage, Inc. answered the complaint and Coors moved to dismiss. The latter motion was granted. The order granting the motion to dismiss was entered on April 2, 1976, following which this appeal was filed.

The complaint alleged that:

Coors manufactures malt liquor in Colorado and sells it to Cheyenne Beverage, Inc. exclusively in Cheyenne, Wyoming.

Appellant has purchased malt liquor from Cheyenne Beverage, Inc. for many years.

For several months preceding the filing of the complaint, appellant resold the malt liquor so purchased to buyers who transported it to the District of Columbia and to the State of Pennsylvania, where they resold it pursuant to the laws there in force.

That plaintiff has a Wyoming retail liquor license permitting it to sell as a retail liquor dealer and a permit as well from the U.S. Department of the Treasury to operate as a retail liquor dealer and as a wholesaler.

That on or about October 1, 1975 defendant Coors, Ron Purvis and others engaged in a continuous unlawful combination and conspiracy to restrain and monopolize interstate trade and commerce by refusing to sell to the plaintiff and others for resale.

That the unlawful combination and conspiracy is between Coors, Ron Purvis and other co-conspirators.

1. The decision of the trial court is substantially summarized in the following paragraphs:

The plaintiff, here, is seeking to use the provisions of the Sherman Act to protect a form of business transaction which is condemned by the language of Wyoming Statutes, Title 12. The anti-trust laws should not be enforced in a manner which conflicts with state laws enacted under the Twenty-First Amendment. *United States v. Frankfort Distilleries, supra.* Since the plaintiff is not entitled to the protection of the antitrust laws in this action where enforcement would result in conflict with state laws enacted pursuant to the Twenty-First Amendment, the Motion to Dismiss for failure to state a claim upon which relief may be granted should be sustained.

The same conclusion is reached if the problem is approached on the issue of standing to initiate a private treble damage action. In order to have standing under 15 U.S.C. § 15, a plaintiff must allege injury to a business or property interest by reason of acts or conduct which are prohibited by the antitrust laws. Whether the plaintiff has property which if injured would authorize a treble damage action depends upon whether what the plaintiff possessed was deserving of legal protection. *Martin v. Phillips Petroleum Co.,* C.A.Tex.1966, 365 F.2d 629, *cert. denied,* 385 U.S. 991 [87 S.Ct. 600, 17 L.Ed.2d 451]. The business interest which plaintiff seeks to protect violates state liquor control laws and these violations would justify suspension or revocation of Lamp Liquor's retail license under § 12–28, Wyo.Stat. Accordingly, the plaintiff's property or business interest is in conflict with state law and not deserving of legal protection. Since the plaintiff lacks the necessary business or property interest, he also lacks standing to initiate this suit.

That the purpose of this is to refuse sales to plaintiff and others for resale to members of the public who will transport and resell in Pennsylvania or the District of Columbia.

That requirements have been established for marking and care for the product sold to the plaintiff and others which are strict and extensive rendering it impossible to comply.

Certain overt acts are also alleged in the complaint, the net result of which, according to the complaint, is restriction of sales for resale.

As we have previously noted, the district court in denying relief and dismissing the complaint acknowledged that this would ordinarily be an antitrust suit, but because of the presence of a conflict between the Twenty-First Amendment to the Constitution of the United States and the Sherman Act, the latter is not available to the plaintiff, thus eliminating all grounds for granting relief.

## I.

A different panel of this court has very recently reviewed a case which is generally similar to the case at bar, in which Coors was a party. This arose in the District of Colorado. *See Adolph Coors Company v. A & S Wholesalers, Inc.,* 561 F.2d 807 (10th Cir. 1977). This action was instituted by Coors. It sought to enjoin A & S, a North Carolina corporation, from purchasing Coors beer in Colorado from Colorado retailers and transporting it to North Carolina for resale to retail outlets. Defendant A & S filed an answer and counterclaim alleging that Coors and others had conspired to impose customer and territorial restrictions on independent distributors, wholesalers and retailers. Damages were sought based on alleged violations of the Sherman Act. The case was tried to the court following which the Coors complaint was dismissed and the preliminary injunction that had been entered was dissolved. The A & S counterclaim was dismissed insofar as it sought relief based upon the Coors prosecution of the instant lawsuit. The court went

on to hold, however, that the A & S counterclaim, in which it was alleged that Coors had imposed territorial and customer restrictions, constituted a valid claim. Thereafter, the counterclaim was tried, a verdict was returned in favor of Coors and judgment was entered on that verdict. On appeal A & S sought reversal of the trial court's dismissal of that part of the lawsuit that alleged violation by Coors based on its prosecution of an action seeking to uphold its trade practices. The part of the trial court's judgment dismissing this claim was affirmed. The refusal of the trial court to hold that Coors' conduct constituted a *per se* violation was also upheld. This ruling was in recognition of the decision of the United States Supreme Court in *Continental T. V., Inc. v. GTE Sylvania Inc.,* —— U.S. ——, 97 S.Ct. 2549, 2562, 53 L.Ed.2d 568 (1977), which had been rendered after the trial court's ruling and before appeal. This case had overruled the so-called *Schwinn per se* doctrine. *United States v. Arnold, Schwinn & Co.,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967).

Our decision in *Coors v. A & S* also gave full recognition to the principal that *in pari delicto* based on alleged violation of law does not constitute a bar to a private antitrust action.

Notwithstanding the broad range of our decision in *Coors v. A & S,* it does not fully deal with the issues which are here raised.

## II.

WHETHER THE POWER GRANTED TO THE STATES BY THE TWENTY-FIRST AMENDMENT SUPERSEDES AND PREEMPTS THE FORCE AND EFFECT OF THE FEDERAL ANTITRUST LAWS IN THE AREA OF LIQUOR REGULATION SO AS TO RENDER THE FEDERAL ANTITRUST LAWS INOPERATIVE

The trial court ruled that the antitrust laws as applied to the liquor traffic were in conflict with the Twenty-First Amendment and the Wyoming liquor licensing laws; since the Twenty-First Amend-

ment was of constitutional status, it acted to overcome the antitrust laws and to preclude their operation.

The trial court further said that the Wyoming statute authorizing the issuance of wholesale and retail licenses was in basic conflict with the activity in which the appellant was engaged, that is selling to purchasers from other states in circumstances that suggested an intent to resell it. As a consequence of this activity by appellant Lamp, the court said that the Sherman Act remedies were not available to it. Therefore, it was the conflict that the court found between the state laws as authorized by the Twenty-First Amendment and the antitrust laws invoked by appellant which gave rise to the trial court's decision to dismiss plaintiff-appellant's complaint.

### A.  The Twenty-First Amendment

Section 1 repeals the prohibition amendment (the eighteenth). Section 2 prohibits the transportation or importation into any state for delivery or use therein of intoxicating liquors in violation of laws of that state. Section 3 deals with ratification.

Therefore, it is Section 2 of the Amendment which confers powers on the state to regulate the liquor traffic within the state. It is the scope of this provision which needs to be measured in considering whether it operates to prevent or curtail an action under the antitrust laws. Its terms are as follows:

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

2. There is no evidence that the Wyoming statutes have been applied in an effort to prevent the export of alcoholic beverages, as we have seen, the Twenty-First Amendment gives the state power to prohibit transportation or importation into that state, and Wyoming apparently has observed that limitation insofar as sales for use outside the state are concerned.

3. In the only case which has considered the issue whether the Twenty-First Amendment in and of itself can act to bar a prosecution of the

The general import of this provision is to prohibit importation into a state for delivery or use therein of liquor in violation of the laws of that state. Its main purpose, then, would appear to have been to give a dry state power to protect itself from importation of liquor into the state for use therein. It is also clear that the section does not undertake to approve or disapprove of trade restrictions such as those that are here complained of nor does it seek to authorize the granting of antitrust exemption or immunity. Furthermore, the amendment limits itself to "delivery or use therein [that is within the state] of intoxicating liquors." It certainly does not seek to prohibit exportation in commerce to a place outside the state.

### B.  The Wyoming Statute

Nor can it be contended that the Wyoming statute enacted pursuant to the amendment and providing for wholesale and retail licenses has undertaken to deal with the kind of condition that we find here. Under the applicable statute, a wholesaler is one "who sells or offers to sell any alcoholic or malt beverages to a retailer." Wyoming Statute, Section 12-2(p). The retailer mentioned in the definition just given is defined by the statute as one who has a license "to sell alcoholic and/or malt beverages for use or consumption but not for resale." Wyoming Statute, Section 12-2(d). The most that it does, therefore, is to circumscribe the scope and extent of the license.[2] In order for the statute to be construed so as to be in conflict with the antitrust laws resulting in preemption of the antitrust laws, it would have to be more specific. In a matter of this magnitude and importance, we cannot indulge such extensive implications.[3]

Sherman Act against producers, wholesalers and retailers of liquor charged with conspiracy to fix prices, it was held that the Twenty-First Amendment of itself did not bar prosecution under the federal antitrust act. *U. S. v. Frankfort Distilleries*, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945). To be sure, there was a concurring opinion by Justices Frankfurter and Roberts saying that if Colorado had authorized the transactions complained of, the Sherman Act could not override this exercise of power.

Our conclusion is, then, that the state has not really undertaken to regulate in the subject area and, therefore, there can be no real conflict between the Wyoming statute and the antitrust laws. They are reconcilable and can exist side by side. Wyoming statutes require the wholesaler and the retailer as well to be limited to the wholesale and retail licenses respectively.

The effect that the Twenty-First Amendment in and of itself has on antitrust litigation is authoritatively determined by the Supreme Court in *U. S. v. Frankfort Distilleries*, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945), which held that the amendment of itself does not preclude antitrust prosecutions. The concurring opinion suggested that a statute enacted pursuant to it might be capable of doing it. Assuming, therefore, that where a statute pursuant to the Twenty-First Amendment is enacted, there is an argument to be made that if it is in conflict with the Sherman Act, the latter must give way to it. Once again, however, it is a matter that could not be left to conjecture since the amendment is not self-executing.

But even if the Wyoming legislature had legislated pursuant to the Twenty-First Amendment specifically to deal with the problem here, it would not and does not follow that the appellees, Adolph Coors Company and Cheyenne Beverage, Inc.,

have an *ad hoc* authority to utilize the sovereignty of the state so as to participate in the regulation of the traffic for its own purpose. Coors does not, in other words, stand in the shoes of the State of Wyoming. The remedy, if any, belongs to the state.

Even if it could be said, then, that there is an implied authority on the part of Wyoming to prevent the kind of transactions that are here involved, it cannot be said that Wyoming has expressed an intention to allow Coors and Cheyenne Beverage, Inc. to assume its official function.

This very reasoning was applied in *Coors v. A & S, supra,* and in the trial court Judge Arraj said that: "[e]ven if we assume the existence of state power under the Twenty-First Amendment to give shelter from the antitrust laws to agreements imposing such restrictions, the naked existence of the power affords no such protection in the absence of its utilization." U.S.Dist.Ct.Colo., C-4700, unpublished opinion, March 3, 1975.

In sum, since the state statute is silent on the subject of sales in quantity by a retailer, and since the state statute also is silent on the question whether the private parties can exercise state sovereignty for the purpose of serving private ends, and inasmuch as there is a lack of conflict between the state law and the Twenty-First Amendment, we must conclude that the decision of

---

We must look to the majority opinion for guidance. The opinion of the majority speaks directly to the question before us and it interprets the amendment as authorizing the state to regulate liquor traffic flowing *into* the state. At the same time, the majority stated that it does not follow from the state's power to regulate imports that the United States is thereby without power to regulate the conduct of persons engaged in interstate trade outside the state.

The Supreme Court's views contained in the majority opinion are as follows:

It is argued that the Twenty-First Amendment to the Constitution bars this prosecution. That Amendment bestowed upon the states broad regulatory power over the liquor traffic within their territories. It has not given the states plenary and exclusive power to regulate the conduct of persons doing an interstate liquor business outside their boundaries. Granting the state's full authority to determine the conditions upon which

liquor can come into its territory and what will be done with it after it gets there, it does not follow from that fact that the United States is wholly without power to regulate the conduct of those who engage in interstate trade outside the jurisdiction of the State of Colorado.

The Sherman Act is not being enforced in this case in such manner as to conflict with the law of Colorado. Those combinations which the Sherman Act makes illegal as to producers, wholesalers and retailers are expressly exempted from the scope of the Fair Trade Act of Colorado, and thus have no legal sanction under state law either. We therefore do not have here a case in which the Sherman Act is applied to defeat the policy of the state. That would raise questions of moment which need not be decided until they are presented.

*Id.* at 299, 65 S.Ct. at 664–65 (footnotes omitted).

the district court holding that there is a conflict that precludes the action is ill-founded and must be reversed.

## III.

WHETHER THE TRIAL COURT WAS CORRECT IN RULING THAT LAMP LIQUORS LACKED STANDING TO PROSECUTE THE ANTITRUST ACTION ON THE REASONING THAT IT HAD NO VALID BUSINESS INTEREST AT STAKE SINCE THIS INTEREST WAS IN CONFLICT WITH STATE LAWS

■ We hold that plaintiff-appellant is not precluded on the face of the complaint from pursuing this action. It is conceivable that plaintiff could lose the case for lack of damages, but we must hold that this is not to be prophesied from the fact that plaintiff may have acted contrary to law. The judge's decision is simply an application of the doctrine of *in pari delicto*, which doctrine has been rejected in this Circuit as it applied to an antitrust suit.

The court's most recent decision in *Adolph Coors Company v. A & S Wholesalers, Inc., supra*, held that the violation of state liquor laws roughly similar to those present here does not operate to bar an antitrust claimant's recovery. A & S Wholesalers in that case sought to recover against Coors in a counterclaim claiming that Coors had violated Section 1 of the Sherman Act. Because of alleged violations by A & S of North Carolina, Colorado and federal liquor laws, Coors, as in the present case, asserted that A & S was barred from obtaining antitrust relief. As in this case, it was contended that A & S as a retail license holder was precluded from selling at wholesale. These sales then were claimed to be unlawful. The district court ruled, however, that assuming that A & S had committed these violations, it did not constitute a bar to an antitrust counterclaim. On appeal this court affirmed without restriction Judge Arraj's decision.

Our decision in *Semke v. Enid Automobile Dealers Assoc.*, 456 F.2d 1361, 1369–70 (10th Cir. 1972), draws on *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 140, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). *Semke* reasoned from the proposition that contributory illegality is no bar to a Sherman Act suit. It declared that the violation of a statute in the abstract is unavailable to an antitrust defendant to allow an antitrust case to be halted at the threshold. Other circuits have similarly interpreted the *Perma Life* decision. *See Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 279 (9th Cir. 1976); *Greene v. General Foods*, 517 F.2d 635, 646–47 (5th Cir. 1975); *Premier Electrical Construction Co. v. Miller-Davis Co.*, 422 F.2d 1132, 1133 (7th Cir. 1970). These cases recognized, though, that "equal fault" could be a bar.

There is good reason besides the underlying policy considerations present in antitrust cases for rejection of the *in pari delicto* defense here. That reason is that the plaintiff has not participated in the illegal conduct which the defendant is alleged to have carried out and hence there cannot be any "equal fault" contention as to plaintiff. Instead the defendant is forced to rely on a violation of state laws which has only the slightest relationship to the transaction and which is improperly invoked by defendant against plaintiff. Hence, as we view it, the assertion of illegality or *in pari delicto* is wholly unrelated to the lawsuit filed by the plaintiff-appellant and, therefore, it is not properly asserted even under the guise of lack of standing.

## IV.

WHAT IS THE EFFECT OF THE ANNOUNCEMENT BY THE SUPREME COURT OF ITS DECISION IN CONTINENTAL T.V., INC. v. GTE SYLVANIA INC.?

We have noted above that the district court ruled that absent the alleged violation of liquor laws of Wyoming by Lamp Liquors, there would be an antitrust violation. The court was, of course, thinking of a *per se* violation based on the vertical restraint of trade practiced by Coors. Since, how-

ever, there has been an intervening change of the law in *per se* violations as a result of the Supreme Court's decision in *Continental T.V., Inc. v. GTE Sylvania Inc., supra,* the district court will be called on to consider, assuming that the plaintiff contends that there is nevertheless a *per se* violation, whether the alleged vertical restraint which prevents Lamp Liquors from selling to persons for out-of-state resale has an effect of such great magnitude on competition and lack of redeeming value that a *per se* illegality rule should apply under *GTE Sylvania Inc., supra; Northern Pacific R. Co. v. U. S.,* 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958);[4] and *White Motor Co. v. U. S.,* 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963).

The *Schwinn* case, decided in 1967, had established that certain vertical restraints on trade, to wit, restrictions imposed by a manufacturer upon "areas or persons with whom an article may be traded after the manufacturer has parted with dominion over it," constitute *per se* violations of the Sherman Act. 388 U.S. at 379, 87 S.Ct. at 1865. *GTE Sylvania Inc.* specifically overruled the rule of the *Schwinn* case holding that vertical restraints on trade are to be analyzed by use of a rule of reason. *GTE Sylvania Inc.,* —— U.S. at ——, 97 S.Ct. at 2562–63. Under this holding a *per se* prohibition would be justified only when the threshold of economic harm set forth in *Northern Pacific R. Co.* is reached.

■ In this connection we note that the plaintiff's complaint describes alleged violations other than a vertical restraint of trade including a group boycott or refusal to trade. The trial court's decision did not consider any violations other than a vertical restraint. Under *GTE Sylvania Inc.* this aspect of the case requires that there be a

determination as to whether under all of the circumstances and considering the magnitude of the restraint, it is to be regarded as unreasonable. Other approaches to the antitrust laws described in the complaint are, of course, open to presentation and consideration.

## V.

■ A further and final reason for reversal is the trial court's abrupt disposition of the case on defendant Adolph Coors' motion to dismiss. This was without the presence of witnesses or evidence. The result was that Lamp Liquors did not have an opportunity to be heard on the merits. In view of the depth and substance of the allegations, this was erroneous and, on remand, the plaintiff is entitled to and must have a trial on the merits.

Accordingly, the judgment of the district court is remanded for a trial on the merits.

MARKEY, Chief Judge, dissenting.

With all due deference, I cannot join the majority. Simply stated, my concern rests with the dismissal of the effect of the 21st Amendment on the basis of a distinction between importation and exportation in this particular case. Here, appellant is *not* exporting. Its sales are made within Wyoming. As the complaint states on its face, it is appellant's customers who are exporting. Whether or not appellant's customers might escape the impact of the 21st Amendment is, of course, not before us.

The effect of the majority opinion is to require the Colorado brewer, if it would avoid an antitrust suit, to engage in the "transportation or importation into" Wyoming of malt liquor for "use therein . . . in violation of the laws" of Wyoming.* I

---

4. There, the Supreme Court stated that "there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use."

* Wyoming Statute, Section 12–2(d), defines a retail liquor license:

(d) Retail liquor license.—The words "retail liquor license" shall mean the authority under which a retailer shall be permitted to sell alcoholic and/or malt beverages for use or consumption *but not for resale.* (Emphasis supplied.)

can find nothing in the authorities cited by the majority, or elsewhere, that would so exalt important public policy underlying our antitrust laws as to require what I believe to be the effective nullification of a constitutional provision.

For the same reasons, taking the allegations of the complaint as true, appellant was not entitled to a trial on the merits. I would affirm.

and Section 12–2(n) defines retailer:

(n) Retailer.—The word "retailer" means a person who sells or offers for sale any alcoholic or malt beverage for use or consumption *and not for resale.* (Emphasis supplied.)